## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **GOVERNMENT ACCOUNTABILITY PROJECT**<br><br>    **Plaintiff,**<br><br><br>        **v.**<br><br>**U.S. DEPARTMENT OF JUSTICE,**<br><br>    **Defendant.** | **Civil Action No.: 11-342 (JDB)** |

## MEMORANDUM OPINION

Plaintiff Government Accountability Project ("GAP") brings this action against the United States Department of Justice ("DOJ") pursuant to the Freedom of Information Act, 5 U.S.C. § 552 ("FOIA").  GAP seeks certain information withheld by the DOJ's Criminal Division ("CRM") regarding a case the World Bank had referred to CRM for possible prosecution.  Currently before the Court are DOJ's motion to dismiss in part for failure to exhaust and its motion for summary judgment on the remainder of the claims, and GAP's cross-motion for summary judgment.   Upon consideration of the parties' written submissions, and the entire record herein, the Court will grant DOJ's motion to dismiss in part and for summary judgment and will deny GAP's cross-motion for summary judgment.

## BACKGROUND

On November 17, 2008, GAP made a FOIA request to the Department of Justice's Freedom of Information Unit for all correspondence from 2005 to the present between World Bank employees or Diligence LLC and CRM regarding Satyam Computer Services, Ltd., the Development Gateway Foundation, or Mohamed Vazir Mushin.  Compl. ¶ 6.  On February 26,

1

2009, CRM responded that no responsive records were located.  GAP followed with a second request on May 18, 2009 regarding the same types of records from specific departments within CRM -- the Fraud Section, the Computer Crime and Intellectual Property Section, and the Office of International Affairs.  Id. ¶ 9. Again, on July 27, 2009, DOJ responded that no responsive records had been located.  Based on information that GAP received from the World Bank concerning a March 14, 2006 meeting between the Fraud Section and the World Bank, and a March 21, 2006 letter sent by the DOJ regarding "its review of the case for possible prosecution," GAP thereafter contacted the DOJ on September 16, 2009 and spoke with Kathleen Segui, CRM's FOIA Public Liaison.  According to GAP, Segui agreed to conduct another search.  Id. ¶ 10.  A same-day fax from GAP to CRM followed, describing the aforementioned letter, as well as other documents GAP sought.  Pl.'s Statement of Facts ¶ 16; see also Facsimile from GAP to DOJ, Def.'s Ex. 9 (Sept. 16, 2009).

Based on the fax, the Fraud Section conducted another search and located eighteen responsive documents -- six letters, eleven e-mails, and one page of attorney notes.  By letter dated December 11, 2009, CRM released one email in part and four documents in their entirety, and withheld thirteen documents in their entirety.  Def.'s Statement of Facts ¶ 11-13; Pl.'s Statement of Facts ¶ 20.  CRM's search did not locate the March 21, 2006 letter referenced by GAP, nor did other subsequent searches yield the letter.  See Letter from CRM to GAP, Def.'s Ex. 10 (December 11, 2009); Declaration of Kristin L. Ellis (May 5, 2011) ("Ellis Decl.") ¶¶ 32, 38-40.  GAP appealed CRM's response to DOJ's Office of Information Policy ("OIP") on December 17, 2009.  Compl. ¶ 13.

In February 2010, OIP directed the Fraud Section to search again for the March 21, 2006 letter referred to in the fax.  Def.'s Statement of Facts ¶¶ 14-16.  A records technician from the

Fraud Section and one of the Fraud Section's deputy chiefs searched correspondence records from March 2006 to find the aforementioned letter.  These searches were also fruitless.  See Ellis Decl. ¶40.  On December 29, 2010, OIP denied GAP's appeal with respect to the documents withheld pursuant to 5 U.S.C. § 552(b)(5), (6), and (7), which are commonly referred to as Exemptions 5, 6, and 7 respectively.  Compl. ¶ 22.

GAP filed this action on February 9, 2011.  The DOJ moved to dismiss GAP's FOIA requests dated February 26, 2009 and June 27, 2009 on failure of exhaustion grounds.  It also moved for summary judgment in the alternative, and with respect to the remainder of GAP's complaint, claiming that an adequate search was conducted and that the claimed exemptions applied to the withheld information.  GAP filed a cross-motion for summary judgment.  During the course of litigation, CRM has now released certain documents mentioned in the December 11, 2009 letter, including those previously withheld pursuant to Exemptions 6 and 7.  See e.g., Def.'s Statement of Facts ¶ 17; Def.'s Opp'n & Reply at 2, 16.  Accordingly, only three issues remain: (1) whether GAP's FOIA requests should be dismissed for failure to exhaust, (2) the adequacy of the DOJ's search, and (3) whether DOJ was entitled to withhold the remaining six documents pursuant to Exemption 5.

## DISCUSSION

### I.    Standards of Review

Because the parties have presented -- and the Court has considered -- matters outside the pleadings, the Court will analyze the parties' motions as motions for summary judgment.  See Fed. R. Civ. P. 12(d).  Moreover, "FOIA cases typically and appropriately are decided on motions for summary judgment."  Defenders of Wildlife v. U.S. Border Patrol, 623 F. Supp. 2d 83, 87 (D.D.C. 2009).

Under Rule 56 of the Federal Rules of Civil Procedure, summary judgment is appropriate "if the pleadings . . . and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). Material facts are those that "might affect the outcome of the suit under the governing law." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). The movant bears the initial burden of demonstrating the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). The party opposing a motion for summary judgment, however, "may not rely merely on allegations or denials in its own pleading; rather, its response must -- by affidavits or as otherwise provided in this rule -- set out specific facts showing a genuine issue for trial." Fed. R. Civ. P. 56(e)(2). The nonmoving party must do more than simply "show that there is some metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). Any factual assertions in the movant's affidavits will be accepted as being true unless the opposing party submits his own affidavits or other documentary evidence contradicting the assertion. Neal v. Kelly, 963 F.2d 453, 456 (D.C. Cir. 1992).

FOIA requires a federal agency to release all records responsive to a proper request except those protected from disclosure by one or more of nine enumerated exemptions set forth at 5 U.S.C. § 552(b). A district court is authorized "to enjoin [a federal] agency from withholding agency records or to order the production of any agency records improperly withheld from the complainant." 5 U.S.C. § 552(a)(4)(B); see Kissinger v. Reporters Comm. for Freedom of the Press, 445 U.S. 136, 139 (1980). The agency has the burden of proving that "each document that falls within the class requested either has been produced, is unidentifiable, or is wholly exempt from the Act's inspection requirements." Goland v. CIA, 607 F.2d 339, 352 (D.C. Cir. 1978) (internal citation and quotation omitted); see also Maydak v. Dep't of Justice,

218 F.3d 760, 764 (D.C. Cir. 2000) (the government has the burden of proving each claimed

FOIA exemption).

To satisfy its burden on summary judgment to show that no genuine issue of material fact

exists, the agency must show that it has "conducted a search reasonably calculated to uncover all

relevant documents." Eliot v. U.S. Dep't of Agric., 596 F.3d 842, 851 (D.C. Cir. 2010) (internal

citations and quotations omitted). The district court may award summary judgment to an agency

solely on the basis of information provided in affidavits or declarations that describe "the

documents and the justifications for nondisclosure with reasonably specific detail, demonstrate

that the information withheld logically falls within the claimed exemption, and are not

controverted by either contrary evidence in the record nor by evidence of agency bad faith."

Military Audit Project v. Casey, 656 F.2d 724, 738 (D.C. Cir. 1981); see also Vaughn v. Rosen,

484 F.2d 820, 826 (D.C. Cir. 1973).

## II.     Exhaustion

A party seeking agency records under FOIA must comply with the procedures set forth in

the regulations promulgated by that agency. See Hidalgo v. FBI, 344 F.3d 1256, 1257 (D.C. Cir.

2003); Calhoun v. U.S. Dep't of Justice, 693 F. Supp. 2d 89, 91 (D.D.C. 2010), aff'd, No. 10-

5125, 2010 WL 4340370 (D.C. Cir. Oct. 19, 2010). When a FOIA request "is not made in

accordance with the published regulations, the FOIA claim is subject to dismissal for failure to

exhaust administrative remedies, as '[t]he failure to comply with an agency's FOIA regulations

[for filing a proper FOIA request] is the equivalent of a failure to exhaust.'" Id. (citing and

quoting West v. Jackson, 448 F. Supp. 2d 207, 211 (D.D.C. 2009)); see also Hidalgo, 344 F.3d at

1259 ("FOIA's administrative scheme favors treating failure to exhaust as a bar to judicial

review.").

DOJ focuses on three FOIA responses GAP could have appealed: February 26, 2009, July 27, 2009, and December 11, 2009.  Two of these responses are not at issue.  GAP concedes that it did not appeal DOJ's February 26, 2009 letter.  Pl.'s Statement of Facts ¶ 9.  Hence, the Court will dismiss GAP's claims based on that letter.   DOJ does not contest that GAP appealed and exhausted its administrative remedies with respect to DOJ's December 11, 2009 response.  See Def.'s Mem. at 1;  Def.'s Opp'n & Reply at 2.  Therefore, the only dispute between the parties with respect to exhaustion is whether GAP timely appealed and exhausted its administrative remedies regarding DOJ's July 27, 2009 response to GAP's FOIA request.  Id. ¶ 13.  In order to claim that the exhaustion requirement was satisfied with respect to that July 27, 2009 letter, GAP relies on its September 16, 2009 communications with DOJ's FOIA Public Liaison Kathleen Segui, which it construes as "a request to perform a better search" or alternatively, "an administrative appeal" of DOJ's July 27, 2009 response.  Pl.'s Mem. at 4.  DOJ disagrees.  It argues that neither the phone conversation nor the fax sent by GAP complied with DOJ's FOIA administrative appeal regulations, set forth at 28 C.F.R. § 16.9(a), which require appeals to be made in writing by letter and sent to DOJ's Office of Information and Privacy.

The Court agrees that GAP failed to satisfy the exhaustion requirement with respect to DOJ's July 27, 2009 response.  Even though GAP claims that its informal communications should be considered a "request to perform a better search" or alternatively, "an administrative appeal," GAP does not seriously contest that it failed to comply with DOJ's published regulations governing administrative appeals for FOIA requests.  See, e.g., Hidalgo, 344 F.3d at 1257 ("Because Hidalgo did not appeal the FBI's denial to the Office of Information and Privacy . . . as required under the DOJ regulations, we conclude Hidalgo failed to exhaust his administrative remedies."); Ebling v. U.S. Dep't of Justice, 796 F. Supp. 2d 52, 65-66 (D.D.C.

2011) (noting that a faxed appeal letter fails to satisfy exhaustion requirements because "applicable DOJ regulations contemplate that appeal letters should be physically mailed to OIP").  The July 27, 2009 response by the DOJ clearly stated that an appeal should be addressed to OIP, and provided a physical mailing address to which the appeal should be sent.  See DOJ's Letter, Def.'s Ex. 8 (July 27, 2009). The letter plainly stated that "[b]oth the envelope and the letter should be clearly marked with the legend 'FOIA Appeal.'"  Id.

These procedures for appealing FOIA responses are not merely technical requirements. "Rather, they are designed to create a uniform and streamlined process to ensure that appeals are received and processed, and the DOJ is entitled to insist that requestors adhere to their strictures." Ebling, 796 F. Supp. 2d at 66.  Because GAP failed to comply with these procedures, its FOIA claims related to the July 27, 2009 response must be dismissed.  See Hidalgo, 344 F.3d at 1257.  However, even if the Court had concluded that those claims were not administratively exhausted, the only remaining issue relevant to the July 27, 2009 letter is GAP's contention that DOJ failed to perform an adequate search.[1]  As explained below, this argument lacks merit.

## III.    Adequacy of the DOJ's Search

To establish that its search was adequate, "the defending agency must show beyond material doubt that it has conducted a search reasonably calculated to uncover all relevant documents."  Morley v. Cent. Intelligence Agency, 508 F.3d 1108, 1114 (D.C. Cir. 2007) (internal quotation marks omitted).  The agency must show that it conducted the search in good faith, and used methods that can reasonably be expected to produce the information requested. See Oglesby v. Dep't of Army, 920 F.2d 57, 68 (D.C. Cir. 1990).  In adjudicating these issues, the court "may be warranted in relying upon agency affidavits."  Morley, 508 F.3d at 1116

---

[1]  The July 27, 2009 letter states that DOJ was unable to locate any records responsive to GAP's request. Def.'s Ex. 8.

(internal quotation marks omitted).  But "such reliance is only appropriate when the agency's
supporting affidavits are relatively detailed and nonconclusory and . . . submitted in good faith."
Id. (internal quotation marks omitted) (ellipses in original).

GAP claims that DOJ's searches were inadequate and conducted in bad faith.  Pl.'s Mem.
at 5.  It points to DOJ's responses that no responsive records were uncovered as a result of
GAP's FOIA requests, followed by the subsequent release of responsive records only after GAP
provided the DOJ with information regarding the existence of those records.  Id. at 7-8.  GAP
also claims that the declaration by Kristin L. Ellis is deficient, because she lacked personal
knowledge or involvement with the processing of the underlying FOIA requests.

These arguments are rejected.  Even though Ellis did not perform the search herself, she
can still satisfy the personal knowledge requirement.  See, e.g., Brophy v. U.S. Dep't of Defense,
Civ. Action 05-360 (RMC), 2006 WL 571901, at * 4 (D.D.C. March 8, 2006) ("Although the
government's declarants here did not physically perform the searches for responsive records,
they satisfy the requirement of personal knowledge and qualify as competent witnesses
concerning the FOIA searches").  Moreover, "[d]eclarations that contain hearsay in recounting
searches for documents are generally acceptable."  See id., 2006 WL 571901, at * 4-5 (citing
Kay v. F.C.C., 976 F. Supp. 23, 24 n. 29 (D.D.C. 1997), aff'd 172 F. 3d 919 (D.C. Cir. 1998)
(Table)).  Ellis's declaration states: "Due to the nature of my official duties, I am familiar with
the procedures generally followed by CRM in responding to requests for information pursuant to
the FOIA."  Ellis Decl. ¶ 3.  She further states, "I am personally familiar with CRM's processing
of the particular FOIA requests that form the basis of this litigation."  Id. ¶ 4.  Moreover, in her
supplemental declaration, Ellis reiterated these points and describes how she reviewed the files
for each request, personally communicated with the personnel responsible for conducting the

searches, and reviewed records.  See Supp. Ellis Decl. ¶ 3. Accordingly, the Court's

consideration of the Ellis declarations is appropriate in analyzing the adequacy of DOJ's search.

DOJ performed four separate searches of the records in the sections requested by GAP.  It

identified the procedures used to initiate the searches, the databases and record repositories

searched, and the terms used for those searches.  See, e.g., Ellis Decl. ¶¶ 11-14; 22-24, 30-34 &

39-40.  DOJ also modified and expanded its search, after GAP provided additional information

about the kinds of documents and information it sought.  See Ellis Decl. ¶¶ 30-34, 38-40.  These

efforts more than satisfied DOJ's obligation to conduct a good faith search using "methods that

can reasonably be expected to produce the information requested."  Oglesby, 920 F.2d at 68; see

also Gutman v. U.S. Dep't of Justice, 238 F. Supp. 2d 284, 291 (D.D.C. 2003) ("[D]efendant's

unearthing of the documents previously withheld from the plaintiff does not constitute bad faith

under this circuit's case law.") (citing Pub. Citizen v. Dep't of State, 276 F.3d 634, 635 (D.C.

Cir. 2002).  In addition, DOJ's failure to locate the March 21, 2006 letter, or any other

documents GAP seeks, does not render its search inadequate.  An "agency's failure to turn up a

particular document, or mere speculation that as yet uncovered documents might exist, does not

undermine the determination that the agency conducted an adequate search for the requested

records." Wilbur v. CIA, 355 F.3d 675, 678 (D.C. Cir. 2004); see also Yeager v. Drug

Enforcement Admin., 678 F.2d 315, 322 (D.C. Cir. 1982) ("A requester is entitled only to

records that an agency has in fact chosen to create and retain . . . [the agency] need not obtain or

regain possession of a record in order to satisfy a FOIA request.").  GAP has made no persuasive

argument that the DOJ acted in bad faith, or that it failed to otherwise conduct adequate searches.

**IV.     Exemption 5**

DOJ seeks to essentially withhold six records from GAP, all on the basis of Exemption 5. Four of these records are emails exchanged on June 14, 2006 between Fraud Section Attorney James Graham and Fraud Section Deputy Chief Mark Mendelson; one record involves an email exchange between Graham and Mendelson on March 20, 2006.  These records were released in part by the DOJ.  Graham's December 22, 2006 notes were withheld in their entirety.  See Updated Vaughn Index, ECF No. 16-2 (July 21, 2011).

Exemption 5 allows an agency to "withhold inter-agency or intra-agency memorandums or letters which would not be available by law to a party other than an agency in litigation with the agency." 5 U.S.C. § 552(b)(5).[2]  "[T]he parameters of Exemption 5 are determined by reference to the protections available to litigants in civil discovery; if material is not 'available' in discovery, it may be withheld from FOIA requesters." Burka v. Dep't of Health & Human Servs., 87 F. 3d 508, 516 (D.C. Cir. 1996).  Accordingly, Exemption 5 covers the kinds of documents that would normally be privileged in the civil discovery context, based on the following privileges: (1) deliberative process; (2) attorney-client; and (3) attorney work-product. See Citizens for Responsibility & Ethics in Washington v. Nat'l Archives & Records Admin., 715 F. Supp. 2d 134, 138 (D.D.C. 2010) (citing NLRB v. Sears, Roebuck & Co., 421 U.S. 132, 148-49 (1975)).  The DOJ has invoked both the deliberative process privilege and the attorney work-product privilege. [3]

_____

[2] Though initially disputed, GAP now concedes that the documents are intra-agency materials, satisfying the threshold requirement of Exemption 5.  See Pl.'s Opp'n & Reply at 10 ("Documents released in part to Plaintiff on July 13, 2011 suggest that the documents withheld pursuant to [Exemption 5] were kept intra-agency.").

[3]  Documents can be withheld under Exemption 5 under both the deliberative process privilege and the attorney work product privilege.  See Wolfson v. U.S., 672 F. Supp. 2d 20, 29 (D.D.C. 2009) (stating same and citing cases); Heggestad v. U.S. Dep't of Justice, 182 F. Supp. 2d 1, 7 (D.D.C. 2000) ("Documents covered by the deliberative process privilege are often also protected by the attorney-work product privilege.").

### A.    Deliberative Process

An agency seeking to withhold documents pursuant to the deliberative process privilege under Exemption 5 must demonstrate that the document is (1) pre-decisional and (2) deliberative. A document is "pre-decisional" if it was generated before an agency action or policy was finally adopted and "deliberative" if it "reflects the give-and-take of the consultative process." Pub. Citizen, Inc. v. Office of Mgmt. & Budget, 598 F.3d 865, 874 (D.C. Cir. 2010); Coastal States Gas Corp. v. Dep't of Energy, 617 F.2d 854, 866 (D.C. Cir. 1980).

DOJ states that the deliberative process privilege covers the withheld documents because those documents involve the Fraud Section's decision not to prosecute a matter referred by the World Bank.  Ellis Decl. ¶ 53.  It claims that all the documents in question, which were from 2006, were pre-decisional in nature because they were created prior to the decision not to prosecute, which was made on February 12, 2008.  GAP was provided a copy of the final decision.  Def.'s Mem. at 11 (citing Ellis Decl. ¶ 53).  Specifically, DOJ explains that the partially withheld emails are covered by Exemption 5 because they were between Graham and the Fraud Section's Deputy Chief discussing the status of the case, information Graham needed to review to determine their effect on possible prosecution, an assessment of the evidence and how it would affect the theory of the case, and a discussion of whether Graham should take certain steps in the case.  See id. (citing Ellis Decl. ¶¶ 54-55).  DOJ asserts that the email exchange "reflected a give-and-take of thoughts and recommendations that was part of the decision-making process about how to resolve The World Bank case."  Ellis Decl. ¶ 56.  As for the handwritten page of Graham's notes withheld in its entirety, DOJ claimed that the notes contained information about the case that Graham had deemed relevant regarding the decision of

whether to prosecute, his preliminary impressions about the case, and his thoughts about possible next steps.  Ellis Decl. ¶ 54.

GAP's arguments against the applicability of the deliberative process privilege are unconvincing.  GAP focuses primarily on the sufficiency of the DOJ's supporting declaration provided by Ellis.  Once again, GAP claims that the Ellis Declaration fails to support DOJ's assertion of Exemption 5 because Ellis lacked personal knowledge or involvement with the processing of the underlying FOIA requests.   At the time of her declaration, Ellis was employed as a trial attorney in CRM's FOIA and Privacy Act unit.  GAP points to the D.C. Circuit's decision in Landry v. FDIC, 204 F.3d 1125, 1135 (D.C. Cir. 2000), for the proposition that a formal claim of privilege must be made by a "head of the department" having control over the requested information, and that the assertion of the privilege must be based on actual personal consideration by that official, and a detailed specification of the information for which the privilege is claimed, explaining why the withheld information falls within the scope of the privilege.  See Pl.'s Mem.  at 10 (citing and quoting Landry).  GAP concedes that the "head of department" requirement is broadly construed.  Id.; see also Landry, 204 F.3d at 1135-36.  In any event, the DOJ has now provided a supplemental declaration by Ellis, who was appointed to serve as Deputy Chief of the unit.  See Supp. Decl. of Kristin L. Ellis ("Supp. Ellis Decl.") (July 21, 2011).  Ellis makes clear that she has the authority to claim the privilege, as well as her own familiarity with the procedure for processing FOIA requests, and familiarity with the particular requests at issue here.  See Supp. Ellis Decl. ¶¶ 3-4.  Ellis spoke with the personnel involved with coordinating the specific searches for responsive records and personally reviewed the records and files at issue.  Id.

Accordingly, and in sum, GAP makes no persuasive argument that these documents were improperly withheld pursuant to Exemption 5 under the deliberative process privilege. These documents were clearly intra-agency communications that related to, and preceded a final decision by the DOJ not to pursue prosecution of a case referred to it by the World Bank. Moreover, other courts have concluded that documents prepared in similar circumstances were appropriately withheld pursuant to the deliberative process privilege.  See, e.g., Performance Coal Co. v. U.S. Dep't of Labor, --- F. Supp. 2d. ----, 2012 WL 746411, at * 6-7 (D.D.C. Mar. 7, 2012) (deliberative process privilege applied to withheld information regarding whether to refer miners for possible prosecution based on safety violations); Heggestad v. U.S. Dep't of Justice, 182 F. Supp. 2d 1, 7-12 (D.D.C. 2000) (deliberative process covered documents related to decision-making process of whether to pursue prosecution of taxpayer violations).  Hence, these communications satisfy the "pre-decisional" and "deliberative" elements required to invoke the deliberative process privilege under Exemption 5.

## B.    Attorney Work Product

The attorney work product doctrine protects information prepared by an attorney, or by someone working on behalf of an attorney, in anticipation of litigation.  See Hickman v. Taylor, 329 U.S. 495, 509-10 (1947); see also McKinley v. Bd. of Governors of the Fed. Reserve Sys., 647 F. 3d 331, 341 (D.C. Cir. 2011).  The doctrine is intended to "provide[ ] . . . a 'zone of privacy' within which to think, plan, weigh facts and evidence, candidly evaluate a . . . case, and prepare legal theories."  See Coastal States Gas Corp., 617 F.2d at 864.  The privilege covers both deliberative and factual materials.  See Judicial Watch, Inc. v. U.S. Dep't of Justice, 800 F. Supp. 2d 202, 211 (D.D.C. 2011) (citing Tax Analysts v. IRS, 117 F.3d 607, 620 (D.C. Cir. 1997)).  Therefore, under the work product doctrine, "[a]ny part of [a document] prepared in

anticipation of litigation, not just the portions concerning opinions, legal theories, and the like, are protected . . . and falls under Exemption 5." Id.

Here, the Court readily concludes that the attorney work product doctrine applies to the emails and the notes withheld by the DOJ.  As the Vaughn Indices and the Ellis declarations indicate, the notes and emails involved Fraud Section attorney Graham, and are clearly prepared in anticipation of litigation as they relate to whether the DOJ should pursue prosecution of the case.  The documents discuss the attorney's impressions about the case, the evidence that would be needed to make a determination as to whether prosecution should be pursued, and his thoughts on possible next steps in the case.  See Ellis Decl. ¶¶ 54-55 & 59; Updated Vaughn Index, ECF No. 16-2.

Again, GAP's argument primarily focuses on the Ellis declaration and its purported deficiencies.  GAP argues that the supporting declaration must come from the attorneys involved in the anticipated litigation, rather than from Ellis, in order to claim the attorney work client privilege under Exemption 5.  See Pl.'s Mem. at 11-13.  The Court rejects this claim.  GAP cites to no caselaw standing for the proposition that only the attorneys directly involved in the actual potential litigation can determine -- on behalf of the agency as a whole -- whether certain documents should be withheld under FOIA.  Furthermore, other assertions made by GAP contradict this argument.  GAP concedes that the declarant only needs to "attest to his or her personal 'knowledge of the procedures used in handling a [FOIA] request' and his or her familiarity with the documents at issue." See id. (citing Barnard v. Dep't of Homeland Security, 531 F. Supp. 2d 131, 138 (D.D.C. 2008)) (internal citations omitted).  GAP also concedes that the declarant can be an individual who supervised the search, rather than the individual who actually conducted the search.  Id.  Any doubt that Ellis has personal knowledge and familiarity

with FOIA procedures, GAP's requests for information, and the documents at issue have been

answered by the supplemental declaration submitted.[4]  Accordingly, the Court concludes that

DOJ appropriately invoked Exemption 5 and withheld the documents pursuant to the attorney

work product doctrine.[5]

## CONCLUSION

For the reasons discussed above, the DOJ's motion to dismiss in part and for summary

judgment is **GRANTED**.  GAP's cross-motion for summary judgment is **DENIED**.  A separate

order accompanies this memorandum opinion.

**SO ORDERED.**



/s/
JOHN D. BATES
United States District Judge

Dated: March 29, 2012

---

[4]  Because the Court has concluded that these documents are also appropriately withheld as attorney work product, it need not consider whether any information in the documents was properly segregable. See, e.g., Judicial Watch, Inc. v. Dep't of Justice, 432 F. 3d 366, 371-72 (D.C. Cir. 2005) (segregability not required with respect to attorney work product since "factual elements can seldom be segregated from attorney work product") (internal quotations and citations omitted); Judicial Watch, Inc. v. U.S. Dep't of Justice, 800 F. Supp. 2d 202, 217 (D.D.C. 2011) ("Because the attorney work-product privilege protects from disclosure the entire contents of [covered] documents . . . segregability is not required.") (internal quotations omitted).  In any event, DOJ partially released information in documents to the extent such information was reasonably segregable, and withheld information where reasonable segregability was not possible. Having reviewed DOJ's submissions, including the Vaughn Indices, and the supporting declarations, the Court concludes that DOJ's approach was entirely reasonable.

[5]  Based on the discussion above, the Court will deny GAP's request for discovery. "Discovery is generally inappropriate in a FOIA case." See Brunsilius v. Dep't of Energy, 514 F. Supp. 2d 30, 36 n. 2 (D.D.C. 2007); Voinche v. F.B.I., 412 F. Supp. 2d 60, 71 (D.D.C. 2006) ("FOIA actions are typically resolved without discovery.")  The Court also denies GAP's request for in camera review. Although the Court has broad discretion to conduct in camera review of withheld documents, it is not required to do so. Hall & Assocs v. EPA, --- F. Supp. 2d ----, 2012 WL 718504 (D.D.C. 2012) (citing NLRB v. Robbins Tire & Rubber Co., 437 U.S. 214, 224 (1978)). Having already concluded that the DOJ has not acted in bad faith, and finding that the declarations and Vaughn Indices are sufficiently detailed to allow for meaningful review, the Court finds that in camera inspection of withheld documents is unnecessary.